We'll move on to our third case set for argument today, Collins v. County of Monterey, case number 23-16153. Your Honor, it's John Sosby on behalf of Mr. Collins. Oh, that's okay. So you'll be... This is remote. Yeah. Yes. Thank you. We'll do... I'll let you know once we get set up here. All right, Mr. Sosby. You're ready? Yes, Your Honor. I am. Okay. May it please the Court. Your Honor, this is an appeal from a district court action where summary judgment was erroneously granted foreclosing Mr. Collins' substantive due process, equal protection, and takings claims that arise from the County of Monterey treating his property dissimilarly without cause from all of his neighbors who have been allowed to build residences on their property. Despite the county's planning staff at the time this decision was made finding compelling evidence that this was also supposed to be a developable property and despite the county having insisted that that planning staff representative go back and create reasons for the denial after having telegraphed at that hearing exactly that they were planning to deny the rezone with no reasons in front of them at the time they did so. This is the rankest of arbitrary and capricious decision-making by the Board of Supervisors of Monterey County. The three claims that Mr. Collins has brought arising from the county's treatment of the property in this case are substantive due process, equal protection, and takings claims under both Lucas as a total takings as well as under Penn Central weighing the factors that are cited in Penn Central. So can I focus, I had a couple questions on the two takings claims, the Lucas takings claim. Your argument is that you had an expert come in as I understand it and said that the cost in doing anything with the property now would exceed the revenues, but that doesn't address the retained value of the property. It still has some retained value, right? Your Honor, the expert witness did find that there was some retained value, although that value is value that is related to a non-economic use of the property. That's simply a what could the property be sold for, undevelopable and unusable in its current naturally pristine state. And so that value... But you think under Lucas we don't consider that because we only look at the economic uses and your argument is there's no economic use here, no viable economic use. That is correct, Your Honor. There's no viable economic use of this property. Mr. Collins is required to keep the property essentially an open space by the findings of the Board of Supervisors. The findings are in fact broad enough that not only is he not able to build a residence on the property, these findings are broad enough that they would prevent him from being able to build the allowable uses under the RCCZ zoning. And wouldn't the expert rely on that because the district court did not accept that, right? The district court didn't find that the expert supported the no economic value position. The district court found the expert's opinions were conclusory, although I might use the word instead of conclusory, established. There was no alternative or no... Of course you'd use that term. I would, Your Honor. That's how they talk about it there  to the evidence that was brought by Dr. Farrokh who had really almost a half century of experience in running viable life facilities. He had worked with the automotive society. We're reviewing that. What's our review on that? Because obviously the legal issue we can review de novo, but where the district court basically said these expert reports don't support the position, do we owe a deference to the district court on that issue? I don't believe you do in this case. This is not a daubered decision. In fact, Dr. Farrokh was not sought to be excluded by the county at the time the court made the decision. This is not fact finding by the court. I think it is also entitled to the de novo review standard, given the fact that the court is making a decision that is not daubered related, effectively weighing in a summary judgment context improperly the credibility and the reliability of the expert witness. In addition to Dr. Farrokh's opinion on the takings case, we also have the fact that the sheer breadth of those six reasons that the county of Monterey adopted for the denial of the rezoning. In fact, of those six reasons, I think it's fair to characterize four of them as irrelevant to protection of the public health, safety, welfare and morals. And the remaining two are just factually wrong and inconsistent with the findings of the county's own planning staff. The planning staff report that was created in this action found compelling evidence that the property should be developable and found that there were sites that were less than 30% slow. There were sites that were outside the viewshed of Highway 1, both of which are And yet when the county determined that it would deny the rezoning, it instructed Fiona Jensen, the planning staffer, to go and make sufficient reasons for the denial. And what did she do? Not knowing what else to do, having from her deposition testimony, no guidance from the county board of supervisors, she simply inverted what she had found in her report, which at the time of her deposition, she still believed to be true. Instead, if there were places outside the 30% slow, she now found the entirety of the Collins property was in excess of 30% slow, which is what the county used to justify its rezoning denial. Likewise, the viewshed of Highway 1, where previously there was a finding that there were no, that not all of the property was visible from Highway 1, Fiona Jensen instead, in creating the reasons on which the board of supervisors justified the denial, found that the entirety of the property was visible from Highway 1, which is patently false. So those were, those were the reasons that were cited by the county board of supervisors, which we have argued in our briefs were merely pretextual as a way for the county to create without the expenditure of public funds to purchase this property and create it properly, a preserve in honor of a major de Amaro, who was unfortunately killed in a helicopter crash in Vietnam. There was a significant argument that this had been dedicated as a de Amaro preserve. The county staff found that there was no compelling evidence to find that it was the de Amaro preserve, but that was the motivation of at least one of the supervisors, Supervisor Adams, in taking this property or preventing this property from being developed, which constitutes a taking. And so her reasoning was that I think it's really a shame for the county to move backward with this application today. It's just too much in the staff report that's interpretation. And I just don't like it because this applicant has taken us to court, which certainly indicates a reason beyond the six reasons that were used as justification for this denial as a basis for saying, I don't like this. There was prior litigation, what we've referred to in the briefs as Columns 1, over the termination of a conservation easement. And the county insisted that that easement be terminated before it would even properly consider a rezoning application. They required that the district court enter an order on that. And so Mr. Collins, following that requirement, did take the court did find that the conservation easement was terminated. And yet, what do we find in the six reasons that the Board of Supervisors used for denying the rezoning? One of them is that although the conservation easement has been terminated, resource conservation zoning is consistent with the original intent of the easement, which of course, if it's been terminated, as the county required us to have found, why would that matter? Why would that be relevant to public health, safety, welfare, and morals? Why would it be relevant at all? Can I ask you about the Penn Central takings issue? That test relies on investment-backed expectations being interrupted. Isn't it true, though, that at the time of the purchase, the residential building was not even permitted here? You made an allusion. I think you said, what's the basis for his expectation that he would... His expectation, Your Honor, is colored by the fact that all of the surrounding properties that have a desire to have a residence on them have it. Zoning is, of course, fluid and there's an expectation that zoning may very well change. The fact that Mr. Collins... Do you have any case law that says that under Penn Central, it's reasonable to rely on a rezoning? Not reasonable to rely on a rezoning per se, although I will point the court to language from Palazzolo v. Rhode Island, which says that just as a prospective enactment, such as a new zoning ordinance, can limit the value of land without affecting a taking because it can be understood to be reasonable by all concern, other enactments are unreasonable and do not become less so through the passage of time or time. Mr. Collins bought the property. He bought it with zoning that did not allow development of a residence on it at the time, but there's nothing to prevent him from being able to fairly be considered for a rezoning application. And in fact, the county's arguments in its brief suggest that Mr. Collins, under Lucas, continues to have economically viable uses because some speculator may come and change the zoning. Yet, they're also saying that it's speculative for Mr. Collins and he never should have been able to consider he had investment backed reasonable investment backed expectations because he would have had to change zoning to be able to develop the property. That seems in fairness, your honor, to be speaking from both sides of the county's mouth. And so consequently, yes, he did have knowledge that there was a process he would have to go through to have it rezoned, but nothing that indicates that that would be an issue. Nothing that indicates that this property is different from the others that have residences on. In fact, residences have been built on adjoining properties at higher elevation than Mr. Collins' property. The Frickie property mentioned in our brief, property only within weeks of Mr. Collins' purchase, was in fact rezoned from RC to a different treatment that allowed for the development of a house. That was the Guerin property, both of which are pointed out in our briefs and which were properties that, you know, certainly would fit the problems that the county sees from Mr. Collins' property and yet both of those properties have homes developed on them. Do you want to reserve some time? Unless there's questions. Do you want to reserve some time for rebuttal? I believe I would reserve the remaining time unless anyone has any questions. No questions. Thank you. Thank you. May it please the court. I'm Sam Beiderwolf for the County of Monterey. I think that the appellant in this case would like to have the court to believe that this is a case about government overreach or irrational behavior depriving a private landowner of his property rights. That's really not the case. This case is about a private landowner who made a speculative investment hoping to obtain a change in applicable regulations, which there's nothing wrong with. People do all the time. And he failed to do so. And now he essentially wants the County of Monterey to insure his investment by paying him the value of his property as if it was rezoned anyway. You know, this is not the law. I think if you go through each of his three claims, it's pretty clear why. The equal protection claim, while Mr. Sosby has referenced a couple of potential comparable properties that are... That would be reviewed here for a rational basis, right? Yes. This would be a class of one equal protection claim under OLEC. And those properties, so we need under OLEC and Gerhard and that line of cases, we need to be able to identify direct comparators, like in the Arizona Dream Coalition cases between beneficiaries of the DREAM Act versus other Deferred Action recipients or, you know, planters who've received a particular type of approach permit, I think, in one of the other cases. But here, no other properties were identified at all in the briefs. While they're mentioned in the reply brief, you know, the county would have addressed these issues in our brief, except for they just weren't even identified in the appellant's brief. So to come here into an oral argument and claim that there are comparable properties, it seems like that issue has been waived. You know, under the takings clause, this really isn't a Lucas case. It's unclear what's been taken at all. The property has the same zoning it has when it was purchased. The case, going back to the complaint, you know, it challenges the county's denial of a rezoning permit. It's where while, you know, Palo Zolo indicates that just a change in ownership doesn't eliminate a takings claim, the county's, the Carmel Area Land Use Plan, which established the current zoning, was like 40 years ago. It's so just dramatically outside of the statute of limitations for bringing the takings claim. But under Lucas, you know, here there are multiple entitled uses. The, Mr. Collins is kind of, yes. So his argument seems to be, okay, he agrees there's some residual value, they could resell the property. Sure. But that's only, I guess, 40% of what he paid for it? Is that That's the position of his expert. He had an expert appraiser find some comparable properties and they came up with that value. And do we look at the residual value for purposes of Lucas takings analysis, or do we only look at the economic value of what you can do with it? I know you sort of have a threshold question, which is we didn't do anything after you bought it, so you don't even get into Lucas. Sure. Thank you. I think that we do look at the residual value. And we also, there were entitled uses as well in this case. They may not be, you know, super-duper-duper valuable, but they're not zero. Lucas involves kind of a particular sort of situation where it was not challenged, at least at the Supreme Court, that the property had zero value. Here, you know, there are entitled uses that Mr. Collins never tried to make use of. They may not be his preferred uses, but that doesn't mean that they're worth zero. What are those uses? They're all the types of uses that would be allowed would be some sort of, like, small-scale, like, scientific research facility, maybe like watching, you know, that type of thing. We're not saying that there's robust, you know, economic value in that, but it's not zero. And beyond that, you know, if you look at, and I think that the appellant in this case is really kind of misstating what economic value means. The Dr. Froek's report, I mean, setting aside what deference you owe the district court, the real issue with Dr. Froek's report is that he provides an irrelevant opinion, which is essentially that you couldn't make a profit running a nature center on this property. You know, first of all, I don't know how many nature centers, you know, make a profit anyway, but beyond that, you know, there's no right to make money with your property. You know, you can't just, if I purchase, like, a single-family house that has rent control and, you know, I can't rent it for the cost of my mortgage, that's not a taking. So, and I guess going on to the Penn Central analysis, here, you know, there's negligible economic impact. The property was purchased for $129,000. Even using the valuation provided by appellant of $55,000, that's not really approaching the type of economic impact that we've seen in most cases finding a taking under Penn Central. As well, you know, again, there's a threshold issue of, you know, what did the county even do, what action was taken. But then looking at investment-backed expectations, you know, this case is pretty similar, I think, to the rent control cases, the MHC case, where, as I stated in my introduction, it was, appellant was really betting on obtaining regulatory change. And that's, again, perfectly permissible. It can be a very good investment strategy. It did not work in this case. And, you know, you don't have an investment-backed expectation in obtaining a change of law. I think the cases have been pretty clear on that. I didn't quite understand this. I thought he said he wanted to build a house for him, a residence for himself. Was that wrong? No, that's true. But, you know, the property, there was findings that the district court made in the Collins one case that the property was purchased under values. You know, it was betting on getting a good deal. Yeah, and I gather from this, from the briefs, that this is in a fairly scenic area and there are residential homes around it, and there's probably a view. Yeah, I mean, certainly I can understand why Mr. Collins is interested in this property. It's beautiful land in the Carmel Highlands. There are ocean views from certain parts of that property, I believe, that all large parcels. I probably have a reasonable view of Brad Pitt's house in the Carmel Highlands from there. But, yeah, beautiful, beautiful property. Counsel, Judge Gould, if I could ask you a question. Yes, John. What is the standard of review for us on the various claims, and are there different standards for some of them, de novo and some with deference? I don't think so. I think that all are de novo review of the grant of the motion  Thank you. Thank you, Your Honor. There are different requirements for the various types of statements. Yes, that's right. Each claim has a separate legal standard, but the court, I believe, would apply the same standard of review in looking at the district court's findings. And so, I guess the last prong of the analysis under Penn Central is really the least important, just the character of the government action. But, again, in this case, I think it favors the county's position because there's no physical invasion of the property. This is more of a regulatory decision affecting the various benefits of land ownership, but not the type of character that has been found to support a Penn Central taking. And then, last, I suppose, is really a lot of the appellant's brief is devoted to a substantive due process claim. And, again, there's a very high standard for stating a substantive due process claim where there's no fundamental right at issue, whether it's really arbitrary and capricious, essentially. And so, we have a lot of argument over whether the county's decision was right or not. And I don't really have an opinion on that. I think this is part of the – I think the county's decision was permissible. Certainly, county staff, there's no ignoring that they did recommend that a change in zoning could be proper in this instance. But, again, it's not a violation of your constitutional rights to have elected officials disagree with their staff members, particularly in the context of the county where those staff members are not appointed by the supervisors. And some of the idea of, like, the planners are making up reasons and this and that, really that's just a product of California's Brown Act, which makes decision-making somewhat cumbersome. You know, there's no way to not violate – you can't have the members of the board – a quorum of the members of the board of supervisors meet outside of a public forum without violating the Brown Act. And you can't even have email chains saying they said this, they said that. Everything has to be done in public. So when the board makes their statements in public and the staff is asked to prepare an order for the board, they go back and, yeah, they do kind of try to guess at what the supervisors want. But the supervisors are then empowered to say, no, that's not what we meant. We can come back with a new order saying this. In this case, they signed off on the final order without any further revision. And there's nothing about that that's unusual or improper. All right, I think we understand your position. We have your argument. All right. Thank you, Your Honor. Thank you. We'll give you time for rebuttal. Thank you, Your Honor. I guess I will begin with about where opposing counsel left off, which is that the change from the board of supervisors' decision from what the planning commission had recommended, opposing counsel would suggest that that probably doesn't have any relevance. Although I would point the court to Avenue 60 Investments LLC versus City of Yuma is a case out of the ninth circuit in 2015. And in that case, the city's decision to disregard the zoning advice of its own experts can provide evidence of discriminatory intent, particularly when, as here, the recommendation is consonant with the municipality's general zoning requirements and plaintiff's proper additional evidence of animus. That is the case here where the additional evidence of animus from Supervisor Adams' comments about Hesudas, and this should be the De Amaro Preserve, are in place alongside the fact that the county planning staff found that a recommendation to rezone was in conformity with the zoning ordinances at the time. And the action that they have taken is, in fact, not in conformance with the Carmel area land use plan. I didn't understand this to be a discrimination case. I'm sorry? I didn't understand this was a discrimination case. A substantive due process case, Your Honor. A class of one substantive due process. Oh, that's what we're talking about. Okay. That's, yes. And so in the sense that the substantive due process is raised, that is the concern there. I will mention also in responding to the previous statements, all of the uses the court asked early on in the county's oral argument, what were the uses that were permitted? And I can tell you precisely resource dependent educational and scientific research facilities uses and low intensity day use recreation, such as trails, picnic areas, and boardwalks, restoration and management programs for fish, wildlife, or other physical resources. Those are the allowed uses. And so I would respectfully submit these are all at least quasi-public or public uses. A posting council suggested that, you know, for example, a nature center typically doesn't turn a profit. But I guess I'd ask the court, what else can economically viable mean? Is it economically viable to have a use that does not generate any profit in excess of costs for someone who is a private owner? Keep in mind there are only seven privately owned RCCZ properties in Monterey County. There are other RCCZs owned properties, but they're in the public park system or they're privately owned and used for preserve type uses. Are you arguing that the city, that this county can't zone any property in that manner? No, I'm not arguing that they can't zone it in that manner, only that they have to have a reasonable basis for doing so. Mr. Collins' property is not dissimilar from the other properties. In fact, Dr. Froke, who was not challenged on this point at all, found that biologically and geographically, the Collins property is no different from any of the other properties surrounding it. Okay. Judge Gould, do you have any questions? No questions. Okay. Council, thank you. Thank you to both council for your arguments. We'll submit the case and we'll move on to our. Judge Nelson. Yeah. Judge Nelson, can we please take a 10-minute break? Absolutely. We'll take a brief break while other parties get set up. All rise.
judges: SCHROEDER, GOULD, NELSON